INGLIS *v.* MILLERSBURG DRIVING ASSOCIATION.

1. APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW—MOTION FOR NEW TRIAL—EVIDENCE.
   On error, without having moved for a new trial on the ground that a contract admitted in evidence was erroneously received, appellant is limited to the ground of objection stated in the lower court.

2. ASSOCIATIONS — VOLUNTARY ORGANIZATIONS — PARTNERSHIP — STATUTES.
   An unincorporated driving association, organized under 3 Comp. Laws, § 10025, to clear land and construct a race track, may be sued as an entity or as individuals.[1]

3. ESTOPPEL—DUTY TO SPEAK—CONCEALMENT OF FACTS.
   Where defendants, as an association, contracted with a third party to clear the land of the association during a dry season when the danger of fire was great, and where plaintiff notified the majority of the defendants in person of the danger of setting fires and of the escape thereof, defendants concealing the fact that an independent contractor was in charge of the work, and claiming, in answer to inquiries as to the persons in charge of the work, that the members of the association had charge of it, their acts constituted an estoppel *in pais* and prevent defendants from interposing, in defense of an action for negligently permitting the fire to escape, the point that an independent contractor was in control of the work.[2] OSTRANDER and BLAIR, JJ., dissenting.

4. EVIDENCE—JUDICIAL NOTICE—FACTS OF GENERAL KNOWLEDGE —DROUGHT.
   The court will take judicial knowledge of the fact that during the summer of 1908 a severe drought prevailed in Presque Isle county and in adjoining districts.

5. NEGLIGENCE — CONTRACTS — INDEPENDENT CONTRACTOR — PRECAUTIONS.
   It is the duty of every person who does or causes to be done any act, which from its nature is liable, unless precautions are

[1] As to right of action against unincorporated associations, see note in 2 L. R. A. (N. S.) 789.

[2] Liability of employer for acts of an independent contractor in setting out fire, see note in 17 L. R. A. (N. S.) 788.

taken, to injure others, to see to it that those precautions are taken: he cannot avoid responsibility by turning the matter over to a contractor.

6. SAME—FIRE, ESCAPE OF—MASTER AND SERVANT.

Having notice of the danger of fire escaping on plaintiff's premises, a driving association, which contracted with a third person in a very dry season to do the work of clearing premises controlled by the association, was liable to the injured owner.

Error to Presque Isle; Emerick, J. Submitted November 21, 1911. (Docket No. 120.) Decided March 29, 1912. Rehearing denied June 1, 1912.

Case by James Inglis against the Millersburg Driving Association and others for negligently permitting fire to escape upon plaintiff's premises. A judgment for defendants on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*C. S. Reilley* and *Frank D. Scott*, for appellant.

*Henry, Henry & Henry*, for appellees.

McALVAY, J. This action was brought by plaintiff against defendants to recover from defendants damages for the destruction to his timber and injuries to his land by negligently, carelessly, and wantonly permitting and directing fires to be started on lands in their possession and under their control, and adjoining and immediately south of plaintiff's homestead, in the county of Presque Isle. The declaration of the plaintiff contained three counts. The first two are based upon the statute; section 11653, 3 Comp. Laws. The third sets up a cause of action at common law. All of the individual defendants appeared and pleaded the general issue. Upon this issue the case came on to be tried before the court and a jury.

At the close of taking proofs in the case, during the examination of the last witness for defendants, who was president of the so-called association, and the last witness

sworn, defendants offered and were allowed to put in evidence a certain contract between this association, so called, and a party named Lewis, executed by two of these defendants as president and secretary, for the clearing of certain land, supposedly the land on which these fires were started, under certain terms and conditions. The purpose of introducing this contract was to establish a defense that the acts which caused damage to the plaintiff were the acts of an independent contractor, for which defendants could not be held liable. A motion was made for an instructed verdict in favor of defendants on that and other grounds, which was granted by the court on the sole ground that Lewis was an independent contractor in clearing the land and setting fires, and that defendants were not liable for the damage to plaintiff for which suit was brought.

The Millersburg Driving Association was never incorporated. These individual defendants, intending to form such a corporation, signed such a writing to that effect, each subscribing $100. One other person, who is not a defendant herein, joined these parties, subscribing the sum of $20. They voluntarily associated together, and acted by agreement. It appears that the lands over which the fires ran and destroyed timber and burned the soil of plaintiff were located on three sections within one township. The Presque Isle County Agricultural & Mechanical Society was a fair association duly organized and doing business in Presque Isle county, of which all but two of the individual defendants in this case were members. In July, 1908, the Fair Association turned over to these defendants, under the name of the Driving Association, its fair grounds, being the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 15, town 34 N., of range 3 W., Presque Isle county, under certain terms and conditions, for a period of 15 years, to clear 17$\frac{1}{2}$ acres thereof, and to stump a half mile race track. This land, of which these defendants took possession, joined plaintiff's land located on section 10 of said township upon the south, and upon

it the fires were started which spread upon and over plaintiff's lands, and caused the damage for which this suit was brought. The land described in the contract, which the court held created the relation of an independent contractor, was not the land of the Fair Association, above described, upon which the clearing and burning was being done at the time of the fire, under the claimed control and direction of defendants, but was located directly south of the fair grounds, and by metes and bounds described the west 45 rods of the S. E. ¼ of the N. E. ¼ of section 15. Plaintiff upon writ of error asks for a reversal of judgment against him.

The principal errors assigned relate to the direction of a verdict for the defendants and the holding of the court that, under this contract, defendants were not liable for damages caused by fire set by an independent contractor or his servants. Plaintiff relied upon a recovery on the common-law count of the declaration. We need not at this time state the case made by plaintiff in detail. Suffice it to say that, leaving out of consideration the bearing of this contract upon the questions involved, such evidence was abundant to go to the jury upon every material allegation of the count relied upon, and that, if we come to the consideration of this evidence, the court will, for that purpose, take it as true. As already stated, this contract came into the case at the close of the proofs. It was offered under the claim that it related to the fair grounds. It was not carefully read by plaintiff's counsel, and was received in evidence over what are claimed by defendants to be general objections. No objection was made that under the plea it was not admissible.

In plaintiff's brief it is claimed that the first knowledge that such a contract existed or such a claim would be made was when it was produced in evidence on the trial, and the evidence on his part tends to show that defendants themselves claimed to be doing this clearing, and no mention of this contract was made to him. We do not observe that this claim is denied. As soon as plaintiff

made the discovery that the contract did not cover this land, the attention of the trial court was called to the matter, and also the attention of counsel for defendants. A motion for a new trial was not made, as would have been the proper practice; therefore plaintiff must rely upon objections made and exceptions taken at the time. Plaintiff contends that the court erred in admitting this contract, and also that, upon the facts and circumstances in this case, no defense of independent contractor can be interposed. The objection to the introduction of this contract at the time it was offered in evidence was as follows:

"Simply to protect our rights in the premises, may it please the court, we desire to interpose an objection to the admission of the evidence on the ground that it is incompetent, irrelevant, and immaterial, and for the further reason that the Millersburg Driving Association was not incorporated, and had no authority to enter into a contract of any kind."

This was overruled and an exception taken. The record then proceeds:

"( The Court reads Exhibit B.) This agreement made this 28th day of July, 1908, by and between the Millersburg Driving Association of Millersburg, Michigan, of the first part, and E. M. Lewis of the village of Millersburg, Michigan, of the second part, witnesseth: The said party of the first part covenants and agrees to and with the party of the second part as follows: The aforesaid E. M. Lewis of the second part, agrees to clear up in a workmanlike manner the following described land: Commencing at the southwest corner of the southeast quarter of section 15, town 34 north, range 3 east; thence north 80 rods; thence east 45 rods; thence south 80 rods; thence west 45 rods to the place of beginning, less the acreage of land now cleared and being cleared, for the price of $15.00 per acre. And the aforesaid E. M. Lewis agrees to clear the above described land in a workmanlike manner; that is to say, he agrees to cut all timber and brush, and to remove the same either by burning the same or taking it from off the land. And it is further agreed that the work shall be done acceptably to the board of managers of the Driving Association. It is further agreed

between the parties hereto that the clearing of the aforesaid described land shall be completed by September 1st. The Millersburg Driving Association, party of the first part, agrees to pay E. M. Lewis the price of $15.00 per acre for clearing the aforesaid described land, as follows: One-half of the price per acre as the work shall progress and be acceptable to the board of managers; and the balance, that is to say, $7.50 per acre, when the aforesaid land shall have been cleared and accepted by the board of managers.   And for the true and faithful performance of all and every of the covenants and agreements above mentioned the parties to these presents bind themselves, each unto the other, in the penal sum of one dollar as fixed and settled damages to be paid by the failing party. In witness whereof the parties to these presents have hereunto set their hands and seals the day and year first above written.

"The Millersburg Driving Association,
"By N. C. Monroe, President.   [L. S.]
"B. Mitchell, Secretary.   [L. S.]
"E. M. Lewis.
"Signed, sealed, and delivered in presence of:
"Charles Atkins.
"H. L. Abrahams."

It is claimed by plaintiff that, whether for any reason this contract as between defendants and the independent contractor was or was not valid and enforceable, it is not material, for the reason that the court was in error in directing a verdict against him on account of said contract; that defendants under the circumstances of this case were estopped by their misrepresentations, and their silence when they should have spoken, from interposing such a defense.   The brief of defendants concedes that this unorganized voluntary society was capable of suing and being sued.   Such admission necessarily follows the reliance upon such contract as a relief to them from liability.

The court in his charge to the jury correctly held that these defendants were carrying on their operations by agreement, associated together for a definite purpose, that they were responsible for their acts individually, and as a

whole. This court has so held. *Detroit Light Guard Band* v. *Independent Infantry*, 134 Mich. 598 (96 N. W. 934), and cases cited; section 10025, 3 Comp. Laws.

The record shows affirmatively that a majority of these defendants were personally notified and warned of the danger and damages which would arise from setting these fires. Such notices and warnings were given by plaintiff's sons at times when they were making inquiry as to who were the parties responsible and in control of this work. No one of these defendants claimed or intimated that there was any independent contractor; on the contrary, when asked directly who was in charge and control, it was stated that the work was in the hands of the stockholders, and one of them stated that he was the manager of this work. Further, at the request of one of plaintiff's sons to a defendant, a promise was made to bring the matter of the notice and warning before all the stockholders, which was done, and the answer was returned that, when they needed instructions in the management of their business, they would call for it. The fact that there was an independent contractor was directly concealed and suppressed by them when, by reason of the notice and warning of the danger arising from setting fires and inquiries as to who were the responsible parties, opportunity was offered and defendants were in duty bound to give the information if they had it, and relied upon it. Their conduct and statements misled plaintiff, and gave him distinctly to understand that they were responsible, and deprived him of the right and opportunity to give notice and warning to and deal with the independent contractor. We are forced to agree with this contention, and can come to no other conclusion but that defendants are estopped from interposing the defense that they are not liable by reason of this independent contract. It is well established that an estoppel arises from silence as well as from statements, when there is a duty and an opportunity to speak. There was in this case on the part of the defendants both a duty and an invitation, and defendants

did not speak. Every element of an equitable estoppel has been established by the testimony on the part of plaintiff. The general doctrine of estoppel *in pais* is familiar, and has been frequently recognized and applied by this court. Citation to these decisions is not necessary. The court was in error in holding that defendants were relieved from liability by this contract.

The facts and circumstances of this case, as presented by the plaintiff's evidence, as far as its consideration at this time is concerned, must be accepted as true, together with all legitimate inferences to be drawn therefrom. There appears to be no dispute about the ownership of these lands of plaintiff and the Fair Association, or that the fire occurred as claimed and ran over the plaintiff's lands, causing great damage. Plaintiff made ample proof of this, and also that defendants took control and possession of the fair grounds, and caused them to be cleared; that the season was the dryest ever known in that country, and great care and caution were necessary to protect and guard against fires; that many of these defendants were personally notified of these dangers, and requested to use care in the matter of setting fires to burn over this land south of plaintiff's homestead; that no attention was paid to the warnings given, but the brush and trees on the fair grounds were cut, piled, and fired by those in control and occupying said lands when a strong wind was blowing toward plaintiff's property, in what was claimed to be a wanton, careless, and wilful disregard of plaintiff's rights.

In addition to the evidence on the part of plaintiff in that regard, this court, from its files and records, and from its knowledge of the history of that locality, will take judicial notice of the great drought during that summer and fall, and the great danger to life and property from extensive forest fires.

The further contention of plaintiff is that, if the contract we have considered was admissible, or the proofs of defendants would show that the damages in this case

arose from the acts of the servants of an independent contractor, the court erred in instructing a verdict for defendants, for the reason that, under the circumstances and known conditions, and the warnings of defendants, it was their duty to use all reasonable precautions to prevent damage by fire, and they were not only bound to stipulate in the contract that proper precautions should be taken, but also to see that they were observed, otherwise they would be liable for consequences; that there are exceptions to the general rule that the principal is not liable for damages arising from the wrongful acts of an independent contractor. We agree with this contention. It is founded upon reason and authority. Judge COOLEY, in his work on Torts, says:

"If I employ a contractor to do a job of work for me which, in the progress of its execution, obviously exposes others to unusual perils, I ought, I think, to be responsible, * * * for I cause acts to be done which naturally expose others to injury." 2 Cooley on Torts (3d Ed.), p. 1091.

This exception was recognized in a recent case by this court (*Rogers* v. *Parker*, 159 Mich., at pages 282 and 283 [123 N. W. 1111, 34 L. R. A. (N. S.) 955, 18 Am. & Eng. Ann. Cas. 753]), where the following quotation taken from an eminent author is quoted:

"So it is the duty of every person who does in person, or causes to be done by another, an act which from its nature is liable, unless precautions are taken, to do injury to others, to see to it that those precautions are taken, and he cannot escape this duty by turning the whole performance over to a contractor, etc. Mechem on Agency, § 747, and cases cited."

In 26 Cyc. pp. 1559, 1560, this rule is recognized, and the cases there cited amply sustain it:

"Where the work is dangerous of itself, or as often termed, 'inherently' or 'intrinsically' dangerous, unless proper precautions are taken, liability cannot be evaded by employment of an independent contractor to do the work. Stated in another way, where injuries to third

persons must be expected to arise, unless means are adopted by which such consequences may be prevented, the contractee is bound to see to the doing of that which is necessary to prevent the mischief. The injury need not be a necessary result of the work, but the work must be such as will probably, and not which merely may, cause injury if proper precautions are not taken."

It is suggested that to hold in accordance with this recognized exception to the general rule applied in the case of an independent contractor is to abrogate the rule as followed by this court. It would seem that a careful consideration of what has been said in this opinion, and of the authorities cited, is a sufficient answer to such suggestion. Mr. Justice BLAIR, speaking for this court, in *Rogers* v. *Parker, supra,* a case framed entirely upon the statute, from which we in this opinion have taken this quotation from Mechem, *supra,* said:

"It seems evident that the liability of the owner of lands for negligently permitting fire to escape therefrom is predicated upon his knowledge of the existence of a fire thereon, or, at least, of knowledge of facts which would charge him with notice that the danger of such fire breaking out thereon was imminent. This record is barren of any such evidence."

The Supreme Court of Ohio in a well-considered case has approved this doctrine, quoting from the leading English cases:

"The doctrine of independent contractor, whereby one who lets work to be done by another, reserving no control over the performance of the work, is not liable to third persons for injuries resulting from negligence of the contractor or his servants, is subject to several important exceptions. One of these, applicable as we think to this case, is where the employer is, from the nature and character of the work, under a duty to others to see that it is carefully performed. It cannot be better stated than in the language used by Cockburn, C. J., in *Bower* v. *Peate,* 1 Q. B. Div. 321, 326, a leading and well-considered case. It is, 'that a man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to

arise, unless means are adopted by which such consequences may be averted, is bound to see the doing of that which is necessary to prevent mischief, and cannot relieve himself of his responsibility by employing some one else— whether it be the contractor employed to do the work from which the danger arises, or some independent person—or to do what is necessary to prevent the act he has ordered done from becoming unlawful.' It was suggested by Lord Blackburn in *Hughes* v. *Percival,* 8 App. Cas. 443, that this was probably too broadly stated. But in the recent case of *Hardaker* v. *Idle District Council* (1896), 1 Q. B. 347, the doubt expressed by Lord Blackburn was regarded as unwarranted, and the principle as formulated by Cockburn was adopted and applied. This does not abrogate the law as to independent contractor. It still leaves abundant room for its proper application. 'There is,' as stated by Cockburn, 'an obvious difference between committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless precautionary measures are adopted.'

"'The weight of reason and authority is to the effect that, where a party is under a duty to the public, or third person, to see that work he is about to do, or have done, is carefully performed, so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability, in case it is negligently done to the injury of another." *Covington, etc., Bridge Co.* v. *Steinbrock & Patrick,* 61 Ohio St. 215 (55 N. E. 618, 76 Am. St. Rep. 375), and cases cited.

The principle involved cannot be better stated than it is in the sentence last quoted, *supra.* It is not applied to those cases where the injuries occur which are collateral to the employment, like the dropping of material by the servant of a contractor upon a person passing by, but where a duty is imposed upon the employer in doing work necessarily involving danger to others, unless great care is used, to make such provision against negligence as may be commensurate with the obvious danger. It is this duty which cannot be delegated to another so as to avoid

169 MICH.—21.

liability for its neglect. The facts in the instant case bring it squarely within the rule contended for by plaintiff, supported by the great weight of the authorities. There was a condition of great danger caused by an unprece-dented drought, apparent to every one, cautions and warnings had been given, yet no precautions were required or enforced, in fact, defendants acted in permitting these fires to be set with utter disregard of consequences, which, under the conditions, naturally resulted from such conduct.

The court was in error in instructing a verdict for defendants.

The judgment is reversed, and a new trial ordered.

STEERE and BROOKE, JJ., concurred with McALVAY, J.

OSTRANDER, J. I concur upon the ground that upon the facts the case may fall within the exception to the rule that an independent contract excused the defendants. I think no estoppel was made out and that none can be.

BLAIR, J., concurred with OSTRANDER, J.